IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv-00873

| | |
|---|---|
| LATESHA SAUNDERS, ) | |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| TRIAD MEDICAL SERVICES, INC. d/b/a ) | |
| MAGNOLIA GARDENS EXTENDED ) | |
| CARE COMMUNITY, ) | |
| ) | |
| Defendant. ) | |

## I. INTRODUCTION

1. News of a pregnancy should bring joy. The beginning of new life and the rush of hope and expectancy is exciting, and it deserves to be celebrated. That makes what happened here all the more devastating. Plaintiff Latesha Saunders ("Latesha" or "Plaintiff") learned that she was pregnant soon after she began working for Triad Medical Services, Inc. d/b/a Magnolia Gardens Extended Care Community (the "Company" or "Defendant"). Latesha had suffered medical issues related to her reproductive system in the past, which, for her, meant that learning that she was pregnant brought the aforementioned joy and fear—Latesha knew that the pregnancy was high-risk. She also knew that she needed her job with the Company.

2. Latesha also knew that she could do the work. And she was a terrific employee, who had a true passion for what she did. She had experience caring for the elderly, and her job with the Company let her do what she loved.

3. However, the Company had a different view. Latesha's supervisor told her that she could no longer work without a doctor's note. When Latesha gave the Company a note from her physician—which contained reasonable accommodations related to her high-risk pregnancy—the Company moved to terminate her right away. It had the gall to try forcing Latesha into a resignation. Latesha made clear that, with an infant on the way, she absolutely had to have an income. When Latesha refused to bend, the Company fired her. The Director of Nursing told Latesha that the Company fired her due to her pregnancy-related medical condition.

4. The Company suddenly injected Latesha's time of joy with panic and a new kind of fear. Latesha must be made whole for the harms and losses that she has endured. Moreover, the Company's cruelty and blatant disregard for human decency and the law cannot go unchecked. Accordingly, Latesha brings suit against the Company for violations of Title VII of the Civil Rights Act of 1964 (specifically, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)) (Count I), the Americans with Disabilities Act (Count II), and Wrongful Discharge in Violation of North Carolina Public Policy (Count III).

## II. PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is a resident of Mecklenburg County, North Carolina.

6. Defendant is, and at all relevant times was, a North Carolina corporation and is registered in Yadkin County, North Carolina.

7. Plaintiff worked in Rowan County at Defendant's location at Magnolia Gardens Extended Care Community, 1404 S. Salisbury Avenue, Spencer, North Carolina 28159.

8. Venue is proper in the Middle District of North Carolina because: (a) Defendant's unlawful employment practices were committed in Rowan County, North Carolina; (b) Plaintiff

worked in Rowan County, North Carolina and she would still be working in Rowan County, North Carolina but for Defendant's unlawful employment practices; (c) Defendant resides in Rowan County, North Carolina because it is subject to the Court's personal jurisdiction here in light of their presence in Rowan County and elsewhere in the Middle District of North Carolina; and (d) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Rowan County, North Carolina and elsewhere in the Middle District of North Carolina.

## III. FACTUAL STATEMENT

**A.** **Latesha Learns to Care Deeply for Others, Finds Love and Marries Her Husband, and Seeks Employment with the Company.**

9. Latesha was born in Charlotte, North Carolina. She grew up surrounded by the love of her family. At a very young age, she was taught to take care of those older than her and to help them in any way possible.

10. Latesha has always had a passion for taking care of her elders, especially when no one else seemed willing to do so. This characteristic has served Latesha well.

11. After graduating from high school, Latesha worked for a home health company. One night, the registered nurse on duty told Latesha how much the company appreciated her being there for the residents and that they could see how much she cared for and loved the individuals. The RN also suggested that Latesha consider becoming a nurse. She could, the RN suggested, start out as a medication aid and shadow other nurses while studying for her other degrees.

12. To that end, Latesha attended Kaplan University and graduated with her A.A.S. in Business in 2011. In 2015, she obtained a second degree in Paralegal Technology from Davidson County Community College and obtained her Public Notary certification the following year.

13. Then, after emerging from an abusive relationship, Latesha moved to Lexington, North Carolina to start a new life with her new husband. She had known him from many years ago, and they were able to rekindle that relationship in a beautiful way.

14. Things were falling into place. Latesha saw an online advertisement for an open position at the Company. She immediately applied.

**B.      The Company Hires Latesha and She Excels at Her Job, but Latesha's Pregnancy Announcement Causes the Company to Suddenly Mark Her for Termination.**

15. On or around August 2, 2016, the Company hired Latesha as a Supervisor Med Tech. She gave insulin injections, cared for the elderly, and provided any other necessary help to the residents.

16. Latesha learned that she was pregnant shortly after orientation. Even though she was only around seven weeks pregnant, she immediately told the Company. Latesha had endured a hard, long road to become pregnant and the pregnancy was considered high-risk. Her physician was closely monitoring the situation.

17. In general, everything seemed normal following her pregnancy announcement. Then, on or around November 14, 2016, Latesha's supervisor, Tonya Wilson, asked to speak with her. Ms. Wilson conveyed her concerns about Latesha's "health" and continued work at the Company while pregnant. Ms. Wilson also told Latesha to get a doctor's note setting forth what she could or could not do while working. Ms. Wilson made sure to tell Latesha that she would not qualify for Family and Medical Leave Act ("FMLA") protection. Ms. Wilson told Latesha that the Company would not let her work without this note.

18. Two days later, on or around November 16, 2016, Latesha obtained a note from her doctor, which she handed to Ms. Wilson on or around November 18, 2016.

19. Latesha made clear to the Company that her pregnancy was high-risk. It carried with it significant health risks and issues, meaning that she qualified as disabled. And the Company made it obvious that they disregarded Latesha as disabled.

20. Latesha's doctor note stated that she should not be around any patient who was contagious, had a viral disease, or suffered from Alzheimers. Her doctor also instructed her to not lift anything over 25 pounds, if at all possible.

21. Moreover, Latesha's physician told her that she could eventually need to be on pelvic (bed) rest, but not in such a way that would interrupt her immediate ability to continue working.

22. During early pregnancy, Latesha suffered from nausea, sickness, and pelvic pain related to the high risk pregnancy diagnosis.

23. Beginning in or around October 2016, Latesha began receiving progesterone shots.

24. Despite all of this, Latesha could work and she desperately wanted to continue doing so. She made clear that the pregnancy would only minimally interrupt her work. Latesha was a tough, hard worker and she had decided to press forward and continue earning paychecks for her family.

C. **The Company Removes All Pretext and Explicitly and Illegally Fires Latesha on the Basis of Her Pregnancy and Pregnancy-Related Disabilities.**

25. Instead of providing Latesha with reasonable accommodations, the Company completely removed her from its system. Latesha reached out to Ms. Wilson and asked her what

5

Case 1:18-cv-00873-CCE-JEP   Document 1   Filed 10/15/18   Page 5 of 12

was going on. Ms. Wilson would not answer Latesha's question. She told Latesha to contact Human Resources.

26. On or around November 22, 2016, Human Resources explained to Latesha that the Company had reasonable accommodation options and that she would have to speak to Director of Nursing Tyra Jackson about this.

27. Latesha's relief at this news was short-lived. When Latesha spoke to Ms. Jackson, Ms. Jackson threatened that permitting Latesha to receive accommodations would mean that the Company would "have to do so for everyone else." The Company refused to help Latesha.

28. Ms. Jackson removed Latesha from the system entirely and terminated her employment. The Company has stated that the termination was effective November 20, 2016.

29. Latesha never received a write-up nor any type of complaint or reprimand. Latesha had never been late to work or missed a day. Latesha was a model employee.

30. Latesha asked Ms. Jackson why the Company decided to fire her. She explained that it decided to fire her due to her "medical condition" and doctor's note. Latesha then asked Ms. Jackson if she was being terminated for being pregnant. Ms. Jackson responded, "No, you are being terminated because of your medical condition." Latesha reminded Ms. Jackson that her medical condition was directly related to her pregnancy.

31. But the cruelty went even further. Ms. Jackson tried to bully Latesha into saying that she was leaving voluntarily. This was a complete farce; in no way whatsoever did Latesha decide to leave her job voluntarily. The Company coldly fired her.

32. Out of desperation, Latesha asked Ms. Jackson if she could have her position back after the baby was born. Ms. Jackson told her that this could only happen if a position was available at that time. This was Latesha's last communication with the Company.

33. Latesha filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 4, 2017. On or around July 12, 2018, Latesha requested her Right to Sue from the EEOC, which she received on July 19, 2018.

## IV.     LEGAL CLAIMS

### Count One
*(Violations of Title VII of the Civil Rights Act of 1964—Pregnancy Discrimination Act)*

34. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

35. Through the Pregnancy Discrimination Act, Title VII's "because of sex" or "on the basis of sex" terms include "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions." 42 U.S.C.. § 2000e(k).

36. Defendant employs, and at all relevant times has employed, more than 15 employees.

37. Plaintiff is an African American woman and was pregnant during her time of employment.

38. Despite Plaintiff's lack of disciplinary history, Defendant terminated her two days after providing a pregnancy-related doctor's note to the Company, which outlined her pregnancy, related medical conditions, and accommodation requests which Defendant forced Plaintiff to receive from her physician.

7

39. Defendant violated Title VII by terminating Plaintiff on the basis of her pregnancy, childbirth, or related medical conditions.

40. Defendant also violated Title VII by failing to provide Plaintiff equal treatment and terminating her on the basis of her Pregnancy Discrimination Act protected status.

41. Specifically, Defendant failed to accommodate Plaintiff's pregnancy-related accommodations and fired her for requesting those accommodations.

42. In the alternative, Defendant violated the Pregnancy Discrimination Act by refusing to provide Plaintiff with "light duty" work. Defendant excuses performance of essential functions and provides such "light duty" assignments to other classes of employees, including but not limited to, employees with workers' compensation injuries.

43. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, dimunition in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

44. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

45. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## Count Two
### (*Violations of the Americans with Disabilities Act*)

46. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

47. Defendant regularly employed more than fifteen employees at all relevant times.

48. Plaintiff was disabled in that she had physical impairments that substantially limited one or more major life activities, including but not limited to: her ability to drive, stand, walk, work, sleep, and perform physically enduring tasks for a certain period of time. Plaintiff's condition limited the following major life activities and/or bodily functions: sleeping, standing, lifting, concentrating, thinking, and working.

49. Plaintiff's disability also affected her circulatory, reproductive, and muscular systems.

50. Defendant otherwise perceived Plaintiff as disabled at the time of her termination and in the lead up to her termination.

51. Defendant violated the ADA by terminating Plaintiff on the basis of her real or perceived disability.

52. Defendant violated the ADA by failing to provide Plaintiff reasonable accommodations requested by her physician for her high-risk pregnancy.

53. In the alternative, Defendant violated the ADA by refusing to provide Plaintiff with "light duty" work. Defendant excuses performance of essential functions and provides such "light duty" assignments to other classes of employees, including but not limited to, employees with workers' compensation injuries.

54. Defendant violated the ADA by terminating Plaintiff in retaliation for requesting a reasonable accommodation.

55. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

56. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

57. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## Count Three
### (*Wrongful Discharge in Violation of Public Policy*)

58. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

59. Plaintiff was an at-will employee.

60. Defendant employed at least fifteen (15) employees at all relevant times.

61. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1 (North Carolina's Equal Employment Practices Act) by terminating Plaintiff because of her sex.

62. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the

opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability or "handicap." Defendant violated the public policy by terminating Plaintiff on the basis of his disability (or "handicap").

63. The public policy of the State of North Carolina, as set forth in N.C.G.S. § 168A *et seq.*, North Carolina's Persons with Disabilities Protection Act, also prohibits employers from discriminating against employees on the basis of their disability.

64. Plaintiff qualified as an individual with a disability in that she was actually disabled/handicapped and was perceived as such.

65. Defendant violated North Carolina public policy by terminating Plaintiff because of her actual or perceived disability and/or handicap.

66. Defendant violated the public policy by terminating Plaintiff after she exercised her rights and in good faith opposed what she viewed as injurious conduct as set forth in the paragraphs above.

67. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

68. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

69. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

**JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages under N.C. Gen. Stat. § 1D-15;

3. Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action;

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

5. Grant Plaintiff a trial of this matter by a jury.

This the 15th day of October, 2018.

> */s/ Sean F. Herrmann*
> Sean F. Herrmann (NC Bar No. 44453)
> Kevin P. Murphy (NC Bar No. 41467)
> Van Kampen Law, PC
> 315 East Worthington Avenue
> Charlotte, North Carolina 28203
> Phone: (704) 247-3245
> Fax: (704) 749-2638
> Email: sean@vankampenlaw.com
> Email: kevin@vankampenlaw.com
> *Attorneys for Plaintiff*